**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| **CHARLES LEROY WHITE,**<br><br>Plaintiff,<br><br>vs.<br><br>**ALEX ANDERSEN, in his individual capacity; BRIAN OSWALD, in his individual capacity; GRANT PURCELL, in his individual capacity; and CITY OF DES MOINES, IOWA**,<br><br>Defendants. | Case No. 4:26-cv-00430<br><br>**COMPLAINT AND JURY DEMAND** |

**COMES NOW** the Plaintiff, Charles Leroy White, by and through his attorney, Robert G. Rehkemper, and for his Complaint and Jury Demand against the Defendants, states the following:

## JURISDICTION AND VENUE

1. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (civil rights).

2. This Court has supplemental jurisdiction over Plaintiff's Iowa common law and statutory claims pursuant to 28 U.S.C. § 1367(a), because those claims arise out of the same case or controversy as the federal claims alleged herein.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because one or more of the Defendants resides in this District and because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred within this District.

1. Assignment to the Central Division is proper because the events giving rise to this action occurred in Des Moines, Polk County, Iowa.

2. Plaintiff's causes of action against all Defendants concern violations of his constitutional rights and personal liberties and are brought, to the extent applicable, pursuant to 42 U.S.C. § 1983, the common law, and/or Chapter 670 of the Iowa Code ("Municipal Tort Claims Act").

3. Plaintiff seeks reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988(b).

**PARTIES**

4. Plaintiff Charles Leroy White ("White") is a citizen of the United States and was at all times relevant hereto a resident of Des Moines, Polk County, Iowa.

5. Defendant Alex Andersen ("Andersen") is a citizen of the United States and is a resident of the State of Iowa.

6. At all times relevant hereto, Andersen was a certified peace officer employed by the Des Moines Police Department, acting within the scope of his employment with the City of Des Moines and under color of state law.

7. Defendant Brian Oswald ("Oswald") is a citizen of the United States and is a resident of the State of Iowa.

8. At all times relevant hereto, Oswald was a certified peace officer employed by the Des Moines Police Department, acting within the scope of his employment with the City of Des Moines and under color of state law.

9. Defendant Grant Purcell ("Purcell") is a citizen of the United States and is a resident of the State of Iowa.

10. At all times relevant hereto, Purcell was a certified peace officer employed by the Des Moines Police Department, acting within the scope of his employment with the City of Des Moines and under color of state law.

11. Defendant City of Des Moines, Iowa ("Des Moines" or the "City") is a municipal corporation organized and existing under the laws of the State of Iowa, acting under color of state law, and operating the Des Moines Police Department.

12. Andersen, Oswald, and Purcell are referred to collectively herein as the "Defendant Officers." Each of the Defendant Officers is sued in his individual capacity.

13. As certified peace officers, each of the Defendant Officers had the legal obligation to act in conformity with the United States and Iowa Constitutions and other applicable federal and state law.

14. At all times material hereto, each of the Defendant Officers was acting within the scope and course of his employment as a peace officer with the Des Moines Police Department and under color of state law.

## FACTUAL ALLEGATIONS

### *The Response and Initial Encounter*

15. On December 1, 2024, at approximately 11:30 a.m., officers of the Des Moines Police Department responded to a business located near 2600 Gannett Avenue in Des Moines, Polk County, Iowa, regarding a report of a man who was reportedly looking into and pulling on the door handles of a parked vehicle.

16. The man was later identified as Plaintiff Charles Leroy White.

17. Defendant Andersen was the first officer to arrive on scene. Defendants Purcell and Oswald arrived there after to assist.

18. Officers directed White to leave the property, and White complied, walking away from the premises.

19. White thereafter returned to the area of the property.

### *The Initial Use of Force*

20. The Defendant Officers attempted to take White into custody.

21. As Officers approached, White backed away from the Officers and stated words to the effect that the Officers should not touch him.

22. White did not strike or attempt to strike, lunge toward, or otherwise offer any physical violence to the Defendant Officers.

23. White was unarmed and did not possess or display any weapon during the encounter.

24. Defendant Oswald drew his Department-issued conducted energy weapon (a "CEW," also known by the trademark name "Taser"), pointed it at White, displaying the red laser marking on White's clothing with the device.

25. Officers ordered White to get onto the ground.

26. Defendant Oswald discharged the CEW's probe cartridge at White as he attempted to flee from the Officers on foot. One probe struck White in the back of the neck; the other probe failed to make an effective connection.

***White's Surrender***

27. White attempted to run away from the Officers, and they pursued White a short distance.

28. White ceased continued flight and voluntarily lowered himself to the ground, coming to rest on his back.

29. In lowering himself to the ground and lying on his back, White surrendered and submitted to the Officers' authority.

30. The Defendant Officers were equipped with and activated body-worn cameras during the incident, which recorded the events described herein.

31. Body-worn-camera footage, and a still image captured from that footage, depict White lying on his back on the ground, with his hands visible and empty, offering no resistance, before the Defendant Officers made physical contact with him.



32. As White lay on his back in a posture of surrender, Defendant Oswald yelled at White, "Don't you move! Get on your back now!"

33. Notwithstanding that White had surrendered, was lying on his back with his hands visible, was unarmed, and posed no threat of harm to the officers or to any other person, the Defendant Officers converged upon White and applied physical force to him.

***The Force Applied After Surrender***

34. Defendant Andersen went hands-on and rolled White over from his back onto his front.

35. White remained non-resistant as Andersen rolled him over.

36. As the Defendant Officers applied force to him, White exclaimed, "ah, you broke my jaw," and "please don't do that."

37. While White was on the ground, offering no resistance, and posing no threat to the Officers or to any other person, Defendant Purcell applied pressure and force to White's jaw with sufficient force to fracture it.

38. White screamed out in pain.

39. Defendant Oswald then deployed his CEW in drive-stun mode against White's left calf while White was on the ground and being physically restrained by the Defendant Officers.

40. The force applied to White after he surrendered, including the application of force to his jaw and the drive-stun to his leg, was objectively unreasonable, unnecessary, and excessive under the totality of the circumstances.

41. As a direct and proximate result of the force applied by the Defendant Officers, White sustained a fracture to his jaw.

42. White was thereafter handcuffed and taken into custody.

43. At the time the Defendant Officers applied the force described herein, White had ceased any flight or resistance, was on the ground, was unarmed, and posed no threat of harm to the Officers or to any other person.

44. A reasonable officer in the position of the Defendant Officers would have known that applying such force to a surrendered, non-resistive, and unarmed individual was unlawful.

***Denial of Medical Care***

45. Immediately after the force was applied, and repeatedly thereafter, White told the Defendant Officers that his jaw was broken.

46. White's serious injury was obvious; White is heard on body-worn-camera stating that his jaw was broken and screaming in pain.

47. A fractured jaw is an objectively serious medical need that requires prompt medical evaluation and treatment.

48. Despite their knowledge of White's serious injury, the Defendant Officers did not summon emergency medical personnel to the scene and did not otherwise provide or arrange for medical care for White's jaw.

49. Rather than obtain medical care for White's obvious and serious injury, the Defendant Officers transported White to the police station and then to jail without treatment.

50. White received no medical treatment for his fractured jaw on December 1, 2024.

51. White was not provided medical treatment for his fractured jaw until December 2, 2024, when personnel at the Polk County Jail arranged for White to be taken for medical care at Broadlawns Medical Center

**DAMAGES COMMON TO ALL COUNTS**

52. As a direct and proximate result of the conduct of the Defendants described herein, White has suffered and will continue to suffer the following damages:

    a. Past and future physical and mental pain and suffering;

    b. Past and future loss of function and use of mind and body, physical impairment and disability;

    c. Past and future medical, dental, and related expenses;

    d. Deprivation of his constitutional rights and personal liberties;

    e. Attorney fees and costs; and

    f. Other incidental out-of-pocket expenses.

## LAW COMMON TO ALL COUNTS

53. At all times material hereto, each of the Defendant Officers was acting under color of state law within the meaning of 42 U.S.C. § 1983.

54. The Fourth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, guarantees the right to be free from unreasonable seizures, including the right to be free from the use of excessive force in the course of a seizure. *Graham v. Connor*, 490 U.S. 386 (1989).

55. The reasonableness of the force used is judged from the perspective of a reasonable officer on the scene, in light of the facts and circumstances confronting the officer, including the severity of the crime at issue, whether the individual posed an immediate threat to the safety of the officers or others, and whether the individual was actively resisting or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

56. At all times material hereto, the law was clearly established in this Circuit that the use of objectively unreasonable or excessive force by a law enforcement officer in the course of a seizure violates the Fourth and Fourteenth Amendments to the United States Constitution.

57. At all times material hereto, the law was clearly established in this Circuit that an arrestee who has ceased resisting and surrendered has a constitutional right to be free from the further or continued use of force. *See Burnikel v. Fong*, 886 F.3d 706 (8th Cir. 2017).

58. At all times material hereto, the law was clearly established in this Circuit that law enforcement's use of a conductive energy weapon against an individual who is not actively resisting and poses no imminent threat to officers or others is objectively unreasonable and violative of the Fourth and Fourteenth Amendments. *See Shekleton v. Eichenberger*, 677 F.3d 361 (8th Cir. 2012).

59. At all times material hereto, the law was clearly established in this Circuit that a law enforcement officer who is present at the scene and fails to intervene to prevent or to stop the use of excessive force by a fellow officer, when that officer had a reasonable opportunity to do so, is liable under 42 U.S.C. § 1983 for the resulting deprivation. *See Krout v. Goemmer*, 583 F.3d 557 (8th Cir. 2009); *Putman v. Gerloff*, 639 F.2d 415 (8th Cir. 1981).

60. At all times material hereto, the law was clearly established that officers having custody of an arrestee with an obvious and serious medical need may not act with deliberate indifference to that need. *See Barton v. Taber*, 908 F.3d 1119 (8th Cir. 2018).

61. The foregoing law was clearly established as of December 1, 2024, placing each of the Defendant Officers on fair notice that the conduct described above violated White's clearly established constitutional rights.

## DIVISION I
## Fourth and Fourteenth Amendment (42 U.S.C. § 1983) – Excessive Force and Denial of Medical Care
## Defendants Andersen, Oswald, and Purcell

62. White incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

63. The Fourth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, guarantees the right to be free from unreasonable seizures, including the right to be free from the use of excessive force.

64. The Defendant Officers' use of force against White constituted a seizure of his person within the meaning of the Fourth Amendment.

65. Defendant Purcell's application of force to White's jaw, after White had surrendered, come to rest on the ground, and posed no threat to the officers or others, was objectively unreasonable and violated the Fourth and Fourteenth Amendments to the United States Constitution.

66. Defendant Oswald's use of the CEW against White, including the drive-stun applied while White was on the ground, restrained, and no longer resisting, was objectively unreasonable and violated the Fourth and Fourteenth Amendments to the United States Constitution.

67. Defendant Andersen's use of force against White, including participating in the application of force after White had surrendered, was objectively unreasonable

and violated the Fourth and Fourteenth Amendments to the United States Constitution.

68. To the extent any Defendant Officer did not personally apply a particular use of force described herein, that officer was present, participated in the seizure of White, and had a reasonable opportunity to intervene to prevent or stop the unreasonable force used by the other officers but failed to do so, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

69. At all times following his seizure, White was an arrestee in the custody and control of the Defendant Officers and was entitled under the Fourteenth Amendment to the United States Constitution to adequate medical care for his serious medical needs.

70. White's fractured jaw was an objectively serious medical need that was obvious to the Defendant Officers, who had caused the injury, heard White state that his jaw was broken, and heard White scream in pain.

71. The Defendant Officers acted with deliberate indifference to, and were objectively unreasonable in responding to, White's serious medical need by failing to summon or provide any medical care and instead transporting White to jail without treatment, thereby further violating White's rights under the Fourteenth Amendment to the United States Constitution.

72. The Defendant Officers' conduct was malicious and/or involved reckless, callous, and deliberate indifference to White's constitutionally protected rights, and shocked the conscience.

73. As a direct and proximate result of the Defendant Officers' conduct, White suffered irreparable injury to his constitutional rights and personal liberties guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, and the damages set forth above.

74. The Defendant Officers' conduct was excessive, done with actual malice toward White, and/or with willful and wanton indifference to and deliberate disregard for the constitutional rights of White, justifying an award of exemplary, punitive damages against each of the Defendant Officers.

75. White seeks compensatory and punitive damages against the Defendant Officers for the violation of his rights to be free from unreasonable seizures and excessive force and to receive adequate medical care, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, together with reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988(b).

## DIVISION II
**Municipal Liability (42 U.S.C. § 1983 – *Monell*)**
**Pattern and Practice of Force Against Surrendering and Restrained Arrestees**
**Defendant City of Des Moines**

76. White incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

77. The violation of White's constitutional rights and the resulting damages were directly and proximately caused by the policies, customs, practices, and/or deliberately indifferent failures to train, supervise, and discipline of Defendant

City of Des Moines, acting by and through the Des Moines Police Department. *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978).

78. Des Moines, by and through the Des Moines Police Department, has engaged in a policy, pattern, practice, and/or custom of authorizing, encouraging, and/or tolerating the use of force against arrestees who initially resist or flee but who then cease resisting, surrender, and/or are restrained, and of failing to require its officers to cease, disengage, or call off the use of force once an arrestee has surrendered and ceased resisting.

***The Pattern of Force Against Restrained and Surrendered Persons***

79. The pattern and practice described above is demonstrated by, among other things, the following publicly reported incidents:

a. September 2008 - Octavius Bonds and Erin Evans were assaulted by Des Moines Police Officers Mersed Dautovic and John Mailander, who repeatedly struck both individuals with their City-issued ASP batons after they had ceased any arguable resistance. The Department did not take remedial measures until after the officers were investigated by federal authorities, which led to their indictment and conviction on federal civil-rights excessive-force offenses. The City settled the resulting civil claim for $500,000, yet the practices continued.

b. February 2013 - Orville Hill was assaulted by Officer Colin Boone while Hill was lying face-down and restrained by other officers. Officer Boone was indicted and convicted of federal civil-rights violations for excessive use of

force and had a reported history of prior assaultive conduct against a previously resistive arrestee that was covered up by a fellow officer and went unremedied by Department leadership. The City settled the lawsuit in 2016 for $250,000, yet the practices continued.

c. February 2013 - Dustin Burnikel was assaulted by Des Moines Police Officers after he had been pepper-sprayed and subdued; officers handcuffed Mr. Burnikel and then lifted and dropped him face-first onto concrete. In 2018 a federal jury in this District found that Officers Michael Fong and Greg Wessels used excessive force and committed battery, and the case settled for $800,000, yet the practices continued.

d. February 2018 - Khy'La Williams, then seventeen years old, was pepper-sprayed and thrown to the ground by Des Moines Police Officer Greg Wessels, the same officer involved in the Burnikel matter, at the DART bus station. The claim settled in 2020 for $75,000, yet the practices continued. Officer Wessels continued to work as an active officer despite multiple disciplinary actions for striking restrained individuals.

e. June 2020 - Journalist Mark "Ted" Nieters was tackled to the ground from behind and pepper-sprayed in the eyes by Des Moines Police Officer Brandon Holtan while Nieters was not resisting and was physically restrained, despite Nieters having been visually and verbally identified as a member of the press. The case settled for $100,000, yet the practice of using force against restrained individuals continued.

80. Each of the foregoing incidents involved the use or continuation of force against an individual who had surrendered, ceased resisting, and/or been physically restrained, placing the City of Des Moines on actual or constructive notice of the pattern and practice described herein.

81. The foregoing incidents were not isolated. They span more than sixteen years, involve multiple officers and multiple units, and reflect a continuing, widespread, and persistent pattern of unconstitutional conduct that remained in effect on December 1, 2024.

82. Upon information and belief, additional incidents, citizen complaints, internal-affairs investigations, and internal-affairs findings occurring in the years immediately preceding December 1, 2024, will reflect the same pattern and will be identified through the formal discovery process.

***The City's Ratification and Promotion of Offending Officers***

83. Despite actual and constructive notice of the pattern described above, the City failed to retrain, supervise, discipline, or terminate the officers responsible, and in some instances instead retained or promoted them, thereby ratifying and perpetuating the unconstitutional pattern and practice.

84. The City of Des Moines has a corresponding pattern and practice of promoting officers who use excessive force against restrained individuals and placing them in positions of leadership over new and younger officers, thereby encouraging, facilitating, and promoting a department-wide culture of unconstitutional use of force, as exemplified by its promotion and public commendation of Officer Greg

Wessels notwithstanding his repeatedly documented history of using force against handcuffed and restrained persons.

85. Following the 2018 adverse federal jury verdict finding that he used excessive force and committed battery, Officer Michael Fong continued to work for the Des Moines Police Department and was later assigned to teach de-escalation at the Des Moines Regional Police Academy, and in April 2026 was promoted to the rank of Captain. Although this promotion postdates White's injuries and is not alleged to have caused them, it is alleged as further evidence that the custom, practice, and policy of ratifying and rewarding the unconstitutional use of force described herein was in effect before, on, and after December 1, 2024, and remains in effect today.

***Failure to Train, Supervise, and Discipline***

86. Des Moines failed to adequately train its officers regarding the constitutional limits on the use of force, the obligation to cease and disengage force once an arrestee has surrendered and ceased resisting, and the proper deployment of the conducted energy weapon consistent with the Department's own written policy governing that device[1], with deliberate indifference to the known or obvious consequences of that failure. *City of Canton v. Harris*, 489 U.S. 378 (1989).

[1]Des Moines Police Department General Order, Chapter 8.1 (Conducted Energy Weapon), eff. 2/1/2021 (approved by Chief Dana Wingert).

87. Des Moines failed to adequately supervise and discipline its officers who used force against surrendered, compliant, or restrained arrestees, thereby ratifying, encouraging, and tolerating such unconstitutional conduct.

88. The need for more or a different kind of training, supervision, and discipline was so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of Des Moines can reasonably be said to have been deliberately indifferent to that need.

89. The policies, customs, practices, and failures of Des Moines described herein were a moving force behind, and the direct and proximate cause of, the deprivation of White's constitutional rights and the resulting damages set forth above.

90. White seeks compensatory damages against Des Moines, together with reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988(b). White does not seek punitive damages against the City of Des Moines.

**DIVISION III**
**Assault and Battery**
**Defendants Andersen, Oswald, Purcell, and City of Des Moines**

91. White incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

92. The Defendant Officers intentionally, unlawfully, and without legal justification placed White in reasonable and serious apprehension of an imminent harmful and offensive contact against his person.

93. The Defendant Officers intentionally and unjustifiably caused unwanted, harmful, and offensive bodily contact with White, including the application of force to his

jaw and the deployment of the conducted energy weapon against him, which resulted in physical pain and injury, including a fractured jaw.

94. The Defendant Officers' conduct constituted a willful and wanton disregard for the rights and safety of White.

95. The Defendant Officers' conduct was outrageous and was intended to cause or was undertaken with reckless disregard of the probability of causing severe physical and emotional harm to White.

96. Pursuant to Iowa Code § 670.4A, at the time of the conduct described herein, it was clearly established law that a peace officer is privileged to use only such force as the officer reasonably believes to be necessary to effect a lawful arrest, and no more. Iowa Code § 804.8.

97. It was likewise clearly established law that the use or continuation of force against an arrestee who has surrendered and ceased resisting is not privileged and constitutes assault and battery. *See Burnikel v. Fong*, 886 F.3d 706 (8th Cir. 2017)

98. Accordingly, the Defendant Officers are not entitled to qualified immunity under Iowa Code § 670.4A on White's claims for assault and battery.

99. As a direct and proximate result of the Defendant Officers' conduct, White suffered the damages set forth above, justifying an award of compensatory damages against each of the Defendant Officers.

100. The Defendant Officers' conduct constituted willful and wanton disregard for the rights and safety of White and was undertaken with actual or legal malice,

justifying an award of punitive damages against each of the Defendant Officers pursuant to Iowa Code § 668A.1.

101. Pursuant to the doctrine of *respondeat superior* and Iowa Code Chapter 670, Defendant City of Des Moines is liable for the compensatory damages caused by the wrongful acts and omissions of its employees, the Defendant Officers, committed within the scope of their employment. Iowa Code § 670.2.

102. No exemption set forth in Iowa Code § 670.4 applies to the intentional tortious conduct alleged in this Division.

## **REQUESTED RELIEF**

**WHEREFORE**, Plaintiff Charles Leroy White respectfully requests judgment against the Defendants as follows:

a. Compensatory and actual damages as to all Defendants in a fair and reasonable amount to be determined by the trier of fact;

b. Punitive damages as to Defendants Andersen, Oswald, and Purcell;

c. Nominal damages in the alternative, as to Defendants Andersen, Oswald, and Purcell;

d. Reasonable attorney fees and costs, including pursuant to 42 U.S.C. § 1988(b);

e. Pre-judgment and post-judgment interest as allowed by law; and

f. Such other and further relief as the Court deems just and equitable in the premises.

**JURY DEMAND**

Plaintiff, Charles Leroy White, hereby demands a trial by jury as to all claims and issues stated in this Complaint.

Respectfully Submitted,

By: /s/ Robert Rehkemper

______________________________

Robert G. Rehkemper, AT0006553
Gourley, Rehkemper, & Lindholm, PLC
440 Fairway Drive, Suite 210
West Des Moines, IA 50266
Telephone No. (515) 226-0500
Email: rgrehkemper@grllaw.com
**ATTORNEY FOR PLAINTIFF**

Original filed via CM/ECF.